

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

**ENTERED**
**10/19/2012**

| | | |
|---|---|---|
| IN RE: | § | **Case No. 12-33600** |
| **CHARLES MICHAEL LUCAS,** | § | **Chapter 11** |
| Debtor(s). | § | **Judge Isgur** |

## MEMORANDUM OPINION

James Jolly Clark and Etonic[1] Creations, Inc.'s ("Movants") Motion to Transfer Venue (ECF No. 23) is granted.[2]

Because the central controversy in this bankruptcy case will concern litigation centered in the Western District of Texas, with principal witnesses located in the Western District, transfer of this case to the United States Bankruptcy Court for the Western District of Texas is appropriate.

### Jurisdiction

The District Court has jurisdiction over this proceeding under 28 U.S.C. § 1334(a). Pursuant to 28 U.S.C. § 157(a), this proceeding has been referred to the Bankruptcy Court by General Order 2012-6.

### General Background

On May 10, 2012, Charles Michael Lucas filed his voluntary chapter 11 petition. (ECF No. 1). The Movants are creditors in Mr. Lucas' bankruptcy case. (ECF No. 23 at 1). Mr. Clark is the creator and chairman of the board of Etonic. (ECF No. 66 at 2). Movants and Mr. Lucas entered into a contract under which Mr. Lucas would invest in Etonic. (ECF No. 66 at 2).

---

[1] In Movants' Motion to Transfer Venue the party name is spelled Etonic, but in subsequent filings the party name is spelled Eonic. In this Opinion, "Etonic" will be used to refer to both Etonic Creations, Inc. and Eonic Creations Inc.

[2] Joinders in the Motion to Transfer Venue were filed by First State Bank Central Texas (ECF No. 27) and Texas Capital Bank, N.A. (ECF No. 38).

Movants allege that Mr. Lucas breached the parties' contract (ECF No. 66 at 2); while Mr. Lucas asserts that the parties were released from their obligations under the original agreement, and subsequently executed a new agreement.  (ECF No. 71 at 7).

There are two lawsuits pending in the Travis County District Court related to Movant's claims against Mr. Lucas.  (ECF No. 60 at 1).  The first suit is Cause No. D-1-GN-10-001068; *James Jolly Clark and Etonic Creations, Inc. vs. C. Michael Lucas* ("Original Suit"). (ECF No. 60 at 1).   The second suit is Cause No. D-1-GN-10-003144; *C. Michael Lucas v. James Jolly Clark and Etonic Creations, Inc.* ("Bill of Review").  (ECF No. 66 at 3).

In the Original Suit, Movants asserted claims against Mr. Lucas for breach of contract, aiding and abetting the violation of fiduciary duties, misappropriation of trade secrets, unjust enrichment, and conversion.  (ECF No. 66 at 3).  Included in the body of the original petition were requests for admission including Request for Admission 2, which stated: "As a proximate result of your breaching the contract made the basis of this suit, the Plaintiffs have suffered consequential damages in an amount not less than ten million dollars."  (ECF No. 66 at 3).  Mr. Lucas did not answer the petition and did not respond to the requests for admissions. (ECF No. 66 at 3).  On June 23, 2010, the state court entered a default judgment and awarded Movants $10,000,000 in damages.   (ECF No. 66 at 3).   Mr. Lucas filed a notice of appeal. (ECF No. 66 at 3).

While the appeal of the Original Suit was pending, Mr. Lucas filed the Bill of Review asking that the judgment in the Original Suit be set aside on the grounds that he was not served with process.  (ECF No. 66 at 4).  The Bill of Review was stayed pending the outcome of the appeal of the Original Suit.  (ECF No. 66 at 4).  The court of appeals entered an order reversing the default judgment in part.  (ECF No. 71 at 4).  The court held that the deemed admission was

insufficient evidence to support a $10,000,000 judgment in unliquidated damages, and remanded the case to the trial court for further proceedings regarding the alleged lost profits. (ECF No. 66 at 4).

Prior to the final resolution of the Original Suit or the Bill of Review, Lucas filed a voluntary chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Southern District of Texas.  Multiple parties sought transfer of the bankruptcy case to the United States Bankruptcy Court for the Western District of Texas.

**Venue Background**

Mr. Lucas' homestead is located in Harris County, and he has been a resident of Houston since 1957.  Mr. Lucas' business and personal books and records and his accountants are located in Harris County.  As part of Mr. Lucas' reorganization, he plans to consolidate his business interests to form a single partnership.  He is attempting to liquidate his assets in Austin, and all of his new business ventures are centered here in Houston.

Mr. Lucas' largest real estate holding is the Lakeshore property located in Austin and financed by First State Bank, a party that joined the Motion to Transfer Venue.  Movants assert that by dollar amount, 88.88 percent of creditors are located in the Western District and 1.76 percent are located in the Southern District.[3]  (ECF No. 54-4).  Mr. Lucas concedes that these allegations are accurate.

Movants further assert that 57.94 percent of Mr. Lucas' assets are located in the Western District, and 39.83 percent are located in the Southern District.  (ECF No. 54-3).  Mr. Lucas disputes the asset allocation between the two districts asserting that ECF No. 54-3 fails to include

---

[3] When Etonic is not factored into the calculation, 56.30 percent of creditors are located in the Western District and 6.91 percent in the Southern District.

assets owned in entities.  Regardless of the objection to Movants' asset characterization, Mr. Lucas concedes that on the question of venue, Austin and Houston are very close contenders, but because Mr. Lucas resides in Houston, and properly brought the case here, the case should remain in Houston.

This Court asked Mr. Lucas, whether he would agree to lifting the automatic stay so the Original Suit and Bill of Review could proceed in state court if the bankruptcy case was not transferred.  Mr. Lucas is unwilling to consent to the lifting of the stay until after this Court considers a motion for partial summary judgment regarding damages on Etonic's lost profit claim.  (ECF No. 60 at 3).  Further Mr. Lucas asserted that the case should go to mediation before venue is transferred or the stay is lifted.  (ECF No. 60 at 3).  In their response to Mr. Lucas' Advisory, Movants asserted that they would not agree to mediation prior to lifting of the stay, and did not think it fair for this Court to consider a motion for partial summary judgment on Movants' lost profits claim since it is currently pending in state court.  (ECF No. 63).

## Analysis

28 U.S.C. § 1412 applies specifically to bankruptcy cases and provides that, "a district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties.  28 U.S.C. § 1404(a) provides that, "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

The premise underlying § 1404(a) is that while a plaintiff can file his claim in any appropriate venue, courts should prevent plaintiffs from abusing this privilege and subjecting defendants to inconvenient venues.  *In re Volkswagen*, 545 F.3d 304, 313 (5th Cir. 2008).  Courts consider private and public factors to determine whether transferring venue under § 1404(a) is

proper.  *Longhorn Partners Pipeline L.P. v. KM Liquids Terminals, L.L.C.*, 408 B.R. 90, 98 (Bankr. S.D. Tex. 2009).  Additionally the same sort of factors are considered under § 1412. *Enaca Oil and Gas (USA), Inc., v. TSC Sieber Services, L.C.*, 2010 WL 3385018 at *2 n. 6 (N.D. Tex. 2010).

The private factors are: (1) ease of access to sources of proof; (2) availability of compulsory process to secure attendance of witnesses; (3) cost of attendance for willing witnesses; and (4) all other problems related to ease, expeditiousness and expense of trial.  *Id.* The public factors are: (1) administrative difficulties because of court congestion; (2) local interest in having local cases decided at home; (3) familiarity of the forum with governing law; and (4) avoidance of conflicts of law problems or applying foreign law.  *Id.*  No single factor is dispositive and the factors are not exhaustive.  *Id.* at 98-99.  Rather district courts have discretion to adjudicate motions to transfer venue on a case-by-case basis.  *Id.* at 99.

Additionally, the Fifth Circuit has held that a party's choice of forum should be given little, if any weight in venue analysis. [4]  *Id.* at 102 (citing *In re Volkswagen*, 545 F.3d 304, 315 (5th Cir. 2008)).  Although *Volkswagen* was not a bankruptcy case, this Court has previously found that the same analysis undercuts a home court presumption in bankruptcy cases as well. *Id.*

---

[4] Although a plaintiff's choice of venue is not a distinct factor in the venue transfer analysis, it is taken into account with respect to the movant's burden of showing good cause to transfer.  *In re Volkswagen*, 545 F.3d at 315 n.10. The good cause burden reflects the appropriate deference for plaintiff's choice of venue because to show good cause the movant must clearly demonstrate that transfer is for the convenience of the parties and in the interest of justice. *Id* at 315.

**Main Bankruptcy Case Venue Analysis**

If the sole issues in this case concerned debt reorganization, the venue analysis would favor keeping the case in the Southern District.

### *Private Factors*

The ease of access to sources of proof is neutral.  Even excluding Etonic's claim, 56.3 percent of creditors are located in the Western District as opposed to just 6.91 percent in the Southern District.  Additionally, a majority of Mr. Lucas' assets (57.94 percent) are situated in the Western District.  However as part of his reorganization, Mr. Lucas plans to consolidate his business interests and liquidate his assets in Austin.  All of his new business ventures are centered here in Houston.  Such ventures are integral to Mr. Lucas' plan of reorganization and access to sources of proof regarding them favors the Southern District.  After balancing the high concentration of creditors and assets located in the Western District, with the fact that Mr. Lucas' business will be centered here in Houston going forward, this factor is neutral.

Availability of compulsory process to secure attendance of witnesses favors retention of the case in this District.  Pursuant to Bankruptcy Rule 9016, which incorporates Federal Rule of Civil Procedure 45, this Court has the authority to subpoena third party witnesses situated here in the Southern District, and a court in the Western District has the authority to subpoena third party witnesses situated there.  However, the evidence reflects that witnesses regarding reorganization issues are primarily located in the Houston area.  Accordingly, this factor favors retention of the case in the Southern District.

The cost of attendance for willing witnesses favors retention in this District based on the same reasoning as set forth above.

All other problems related to ease, expeditiousness and expense of trial favor the Southern District. Mr. Lucas' homestead is here in the Southern District, as well as Mr. Lucas' personal and business books and records. Should the case be transferred to the Western District, Mr. Lucas' attorney and accountants would have to travel to Austin creating additional expenses for the estate.

**Public Factors**

The administrative difficulty because of court congestion is neutral and favors neither venue as there is no evidence that the courts in the Western District are less congested than this Court.

The local interest in having local cases decided at home favors the Southern District. Mr. Lucas has his homestead here in Houston, and has been a resident of Houston since 1957. All of the books and records for his businesses are located here in Houston, as well as his accountants and attorneys. As part of Mr. Lucas' reorganization he plans to consolidate his business interests to form a single partnership. He is attempting to liquidate his assets in Austin, and all of his new business ventures are centered here in Houston.

Familiarity of the forum with governing law is neutral because Texas and Federal law apply giving neither forum greater familiarity.

Avoidance of conflicts of law problems or applying foreign law is also neutral, favoring neither venue.

**Etonic Dispute Venue Analysis**

Venue analysis that considers only Etonic's dispute favors transferring venue to the Western District.

### *Private Factors*

The ease of access to sources of proof weighs in favor of transferring venue to the Western District.  Etonic potentially holds a $10,000,000 claim.  The dispute regarding the validity and amount of Etonic's claim is undoubtedly a primary focus of the bankruptcy.  Sources of proof regarding Etonic's claim are located in the Western District, as the agreement giving rise to the dispute was formed and executed in the Western District.  It is undisputed that the primary witnesses regarding the Etonic dispute are located in the Western District.

Availability of compulsory process to secure attendance of witnesses favors Austin as the bankruptcy court in Austin has the authority to subpoena third party witnesses located in Austin that this Court cannot subpoena pursuant to Federal Rule of Civil Procedure 45(b)(2)(B).

The cost of attendance for willing witnesses favors the Western District.  Etonic's claim focuses on a transaction that took place in Austin.  The state court litigation related to the claim took place in Austin.  The witnesses related to this claim will incur less expense if the case is transferred to the Western District.

All other problems related to ease, expeditiousness and expense of trial favor the Western District.  Should the case be retained in the Southern District, Etonic's attorneys and accountants would have to travel to Houston to litigate an Austin based dispute.

## Public Factors

The administrative difficulty because of court congestion is neutral and favors neither venue as there is no evidence that the courts in the Western District are less congested than this Court.

The local interest in having local cases decided at home favors the Western District.  The agreement between Mr. Lucas and Movants, which is the center of their dispute was executed and performed (if at all) in the Western District.

Familiarity of the forum with governing law is neutral because Texas and Federal law apply giving neither forum greater familiarity.

Avoidance of conflicts of law problems or applying foreign law is also neutral, favoring neither venue.

**Totality of Factors**

In analyzing the main bankruptcy case and Etonic's claim separately, the Court reaches opposite conclusions.  If the focus of Mr. Lucas' bankruptcy case is the plan of reorganization, then the case should not be transferred.  If the focus is on the allowance of Movants' claim then venue transfer is appropriate.

The Court has no doubt that the allowance or disallowance of Movants' claim and the determination of the amount of such a claim will greatly impact Mr. Lucas' reorganization.  The Movants' potentially have a $10,000,000 claim in Mr. Lucas' bankruptcy case, which is substantially larger than the claim of any other creditor.

Based on the evidentiary record, the Court concludes that the Etonic dispute will be the focus of Mr. Lucas' bankruptcy.  Moreover, without even considering Movants' claim, the Western District still has the largest concentration of Mr. Lucas' assets and creditors by a sizeable margin.

Mr. Lucas' choice of venue does not serve as an independent factor tipping the scale in his favor.  Rather Mr. Lucas' choice of venue requires Movants to show good cause why the case should be transferred to the Western District and in examining the factors in their totality,

Movants have met their burden.  It is therefore in the interest of justice and convenience to the parties to transfer venue to the Western District.

**Conclusion**

An order, (ECF No. 76) has been issued consistent with this memorandum opinion, transferring this case to the Austin Division of the United States Bankruptcy Court for the Western District of Texas.

SIGNED **<u>October 19, 2012.</u>**

_____

Marvin Isgur

UNITED STATES BANKRUPTCY JUDGE